| | |
|---|---|
| JOCELYN S., individually and on behalf of E.S., and E.S.,<br><br>      Plaintiffs,<br><br>  v.<br><br>BLUE CROSS BLUE SHIELD HEALTHCARE PLAN OF GEORGIA, INC., d.b.a. ANTHEM BLUE CROSS AND BLUE SHIELD; BANK OF AMERICA CORPORATION; BANK OF AMERICA CORPORATION CORPORATE BENEFITS COMMITTEE; BANK OF AMERICA PLAN ADMINISTRATOR; and THE BANK OF AMERICA GROUP BENEFITS PROGRAM,<br><br>      Defendants. | **COMPLAINT** |

Plaintiffs Jocelyn S., individually and on behalf of E.S., and E.S., by and through undersigned counsel, hereby complain against Defendants, alleging in the totality and alternatively as follows:

## INTRODUCTION

E.S. received 10 weeks of medical treatment at Blue Ridge Therapeutic Wilderness ("Blue Ridge"). Defendants denied payment for all but a small portion of those expenses, which required Plaintiffs to pay more than $49,000 out of pocket. The Defendants' did not contest medical necessity of the treatment E.S. received at Blue Ridge; rather, Defendants denied this claim arguing that the treatment Blue Ridge provided was from "alternative residential programs." Following her treatment at Blue Ridge, E.S. received further medical treatment at

Root Transition, LLC. Even though an independent review found that this treatment was medically necessary, Defendants have reimbursed Plaintiffs less than half of the costs they have paid for this treatment, leaving them with more than $54,000 in unreimbursed medical expenses.

## PARTIES, JURISDICTION, AND VENUE

1. Plaintiffs are, and were at all times relevant hereto, residents of Dallas, Texas. Jocelyn S. is E.S.'s mother.

2. Bank of America Corporation is, and was at all times relevant hereto, Jocelyn S.'s employer.

3. Through her employment, Jocelyn S. was and is a participant in the Bank of America Group Benefits Program (the "Plan").

4. E.S. is Jocelyn S.'s dependent and was a minor at all times relevant hereto.

5. As Jocelyn S.'s dependent, E.S. was at all times relevant hereto, a beneficiary under the Plan.

6. Bank of America Corporation, whose address is in Charlotte, North Carolina, is the Plan sponsor.

7. The Bank of America Corporation Corporate Benefits Committee, Bank of America Plan Administrator, believed to be a department or committee within Bank of America Corporation, is the Plan Administrator.

8. Bank of America Corporation contracted with Blue Cross Blue Shield Healthcare Plan of Georgia, Inc., d.b.a. Anthem Blue Cross and Blue Shield ("BCBS") to handle the day-to-day administration of the Plan, including making benefit decisions, paying claims, and processing benefit claims and appeals.

2

9. The Plan is a welfare benefits plan under 29 U.S.C. § 1001 *et. seq.*, the Employee Retirement Income Security Act of 1974 ("ERISA").

10. The Plan is self-insured by Bank of America Corporation. BCBS determines and pays claims, and is a fiduciary of the Plan as defined by ERISA.

11. This lawsuit is brought to obtain an order requiring BCBS to pay or reimburse expenses incurred during E.S.'s treatment at Blue Ridge and Root Transition. The remedies Plaintiffs seek under ERISA and the Plan are for benefits due under the terms of the Plan and pursuant to 29 U.S.C. § 1132(a)(1)(B); for appropriate equitable relief under 29 U.S.C. § 1132(a)(3) based on Defendants' violation of the Mental Health Parity and Addiction Equity Act of 2008 (the "MHPAEA"); an award of pre-judgment interest; and an award of fees and costs pursuant to 29 U.S.C. § 1132(g).

12. This Court has jurisdiction over this case under 29 U.S.C. § 1132(e)(1) and 28 U.S.C. § 1331.

13. Venue is appropriate under 29 U.S.C. § 1132(e)(2) and 28 U.S.C. § 1391(c) based on ERISA's provisions regarding nationwide service of process and venue and the location of the Plan.

## FACTUAL ALLEGATIONS[1]

### *Allegations regarding the Plan*

14. Bank of America Corporation issued a document titled "2021 Bank of America Health & Insurance Summary Plan Description" (the "SPD Booklet").

---

[1] Unless otherwise noted, the information supporting these allegations is contained within the Administrative Record. The Administrative Record is incorporated herein by reference.

3

15.     Upon information and belief, the SPD Booklet, together with any summaries of material modifications, constitute the official summary plan description for the Plan.[2]

16.     Bank of America Corporation contracted with BCBS to be its service representative to handle the day-to-day administration of the Plan and appointed BCBS as its agent to answer benefit questions, make benefit decisions, pay claims, and process benefit claims and appeals.[3]

17.     In general, the Plan covers services and supplies for "medically necessary care," including "mental health and chemical dependencies."[4]

18.     The Plan defines "medical necessity or medically necessary" as follows:

Medical necessity or medically necessary refers to services or supplies provided by a hospital, physician, practitioner or other provider that are determined by your medical plan to be:

- Consistent with broadly accepted medical standards in the U.S. as essential to the evaluation and treatment of disease or injury and professionally recognized as effective, appropriate and essential based on recognized standards or the health care specialty

- Not furnished primarily for the convenience of the patient, the attending physician or other provider

- Furnished at the most appropriate level that can be provided safely and effectively to the patient

- Likely to produce a significant positive outcome, and no more likely to produce a negative outcome than any alternative service or supplies, as it relates to both the disease or injury involved and your overall health condition

- Not more costly than an alternative service or sequence of services at least as likely to produce equivalent therapeutic or diagnostic results as to the diagnosis or treatment of that patient's illness, injury or disease[5]

---

[2] SPD Booklet at second page after cover.
[3] SPD Booklet at 29 and 213.
[4] SPD Booklet at 39.
[5] SPD Booklet at 73-74.

4

19.     The Plan provides that "Mental health and chemical dependency includes treatment rendered in connection with conditions classified in the Diagnostic and Statistical Manual of Mental Disorders (Fifth Edition) published by the American Psychiatric Association."[6]

20.     Mental health and chemical dependency services covered by the Plan include "Acute inpatient and partial hospitalization … Intensive outpatient programs [and] Residential treatment."[7]

21.     The Plan required precertification for inpatient mental health and chemical dependency treatment, and described the consequences of not obtaining precertification as follows:

> Precertification is required for all inpatient care and all alternatives to inpatient care including residential treatment centers, partial hospitalization and intensive outpatient programs. Refer to the Hospital stay row above for information on timing and penalty for failure to precertify. Failure to obtain precertification will result in a penalty, and you'll be responsible for the first $500 of covered expenses in addition to the other required deductible and coinsurance.[8]

22.     The Plan states that it will not pay expenses incurred for:

> Alternative residential programs, such as wilderness camps or military schools, unless they are licensed in their state as a residential treatment facility, provide 24-hour nursing care and have an onsite psychiatrist to provide weekly assessments.[9]

23.     The Plan does not define or describe "alternative residential programs" beyond identifying "wilderness camps or military schools" as examples of alternative residential programs.

_____

[6] SBD Booklet at 52.
[7] SBD Booklet at 53.
[8] SPD Booklet at 39.
[9] SPD Booklet at 63.

5

24.     The Plan does not define or describe "wilderness camps" or describe what constitutes a wilderness camp that would be excluded from coverage.[10]

*Background of E.S.'s medical issues and treatment*

25.     E.S. was diagnosed with posttraumatic stress disorder (F43.10); major depressive disorder, moderate severity, recurrent episodes (F33.1); generalized anxiety disorder (F41.1); social anxiety disorder (F40.10); cannabis use disorder, severe (F12.20); alcohol use disorder, mild (F10.10); and other specified neurodevelopmental discorder with deficits in working memory and executive functioning abilities (F88) under the criteria described in the DSM-5.

26.     E.S. received treatment for these disorders at Blue Ridge from December 12, 2022 through February 21, 2023.

27.     Blue Ridge is a 24/7 outdoor behavioral health treatment facility located in Clayton, Georgia.

28.     Blue Ridge is duly licensed by the state of Georgia to provide these behavioral health services to adolescents and is accredited by a national organization.

29.     Blue Ridge provides mental health and addiction treatment programs that are less intensive than acute hospitalization but more intensive than outpatient therapy, which qualified it as an intermediate or sub-acute behavioral health facility.

30.     At all times relevant hereto, Blue Ridge was licensed by the state of Georgia to provide outdoor youth therapy and operated in accordance with the governing Georgia state regulations.

---

[10] *See* SPD Booklet generally.

31.     E.S. benefited from the intensive mental health treatment she received at Blue Ridge and had improvements in each of her diagnosed conditions from the services she received at Blue Ridge.

32.     Blue Ridge charged $49,320.00 for services it provided to E.S., which charges were submitted to BCBS and denied by BCBS.

33.     In the Explanation of Benefits (EOB) BCBS provided in response to the claims for treatment E.S. received at Blue Ridge, BCBS denied the claims with the explanation: "This service requires preapproval. Your plan doesn't cover this service without it. You are responsible for this amount. You can avoid these charges in the future by asking your doctor if the service requires preapproval. Refer to your plan of coverage booklet for details regarding plan definitions/exclusions/limitations (what is not covered)."

34.     No Plan provision was cited or identified in these EOBs.

35.     In a letter dated January 18, 2024, Jocelyn S. requested a Level One Member Appeal review of BCBS's benefit denials. Among other things, Jocelyn S.:

    a.  Requested BCBS assign a medical or vocational expert who is knowledgeable about generally accepted standards and clinical best practices for outdoor behavioral health programs in the state of Georgia to perform a full, fair and thorough review of her claims;

    b.  Reminded BCBS that under the Employee Retirement Income Security Act of 1974 (ERISA), she was entitled to a response from BCBS that was clear, that specifically stated the reasons for the determination, referenced the plain language on which BCBS's decision was based, and explains what other information she could provide in order to perfect her claims.

7

c.  Requested a physical copy of all documentation used for the initial determination and level one appeal determination, as well as the reviewer's name, credentials and experience;

d.  Noted that the section in the Plan regarding preauthorization did not include any mention of outdoor behavioral health programs or services billed under revenue code 1006, which was the code used by Blue Ridge to identify the services it provided to E.S.;

e.  Pointed out that Blue Ridge is not a camp that would fall under the exclusion for "wilderness camps," but that Blue Ridge is instead a 24/7 outdoor behavioral health treatment facility that is licensed by the state of Georgia to provide behavioral health services to adolescents.

f.  Noted that Blue Ridge qualified as an intermediate behavioral health facility under the Mental Health Parity and Addiction Equity Act of 2008 (MHPAEA) because Blue Ridge provided services that fall between inpatient care for acute conditions and regular outpatient care for people with mental health conditions or substance use disorders;

g.  Requested BCBS conduct a comparative parity analysis to determine whether or not the Plan is truly being administered in compliance with the MHPAEA and provide her with physical copies of any documentation used.

36.  In a letter dated February 23, 2024, BCBS reported that Plaintiffs' level one appeal request had been denied, asserting that the services E.S. had received at Blue Ridge were excluded or not covered under the Plan benefits.

37.  The letter described the basis for denying the appeal request as follows:

8

Request is being administratively denied. Under the Mental health and chemical dependency limitations section listed on page 63of your Benefit Booklet, No payment will be made for expenses incurred for: Alternative residential programs, such as wilderness camps or military schools, unless they are licensed in their state as a residential treatment facility, provide 24-hour nursing care and have an onsite psychiatrist to provide weekly assessments. Refer to Covered medical services in this section for benefits covered under your medical plan.

38.     The BCBS letter described how BCBS came to its decision to deny Plaintiffs' appeal request as follows:

Information about the Clinical Review
Here's some information about the clinical review and how we made our decision

An experienced health-care professional handled the review in , on . [sic.] The clinical reviewer considered your health, your health plan, clinical criteria or guidelines, and may also have used the latest information from proven research and medical journals during the review.

39.     In its denial letter, BCBS did not indicate that it had honored the request that Jocelyn S. made in her appeal to assign a medical or vocational expert who is knowledgeable about generally accepted standards and clinical best practices for outdoor behavioral health programs in the state of Georgia to perform a full, fair and thorough review of the claims. To the contrary, BCBS's denial letter contained only a vague reference claiming that Plaintiffs' appeal had been reviewed by an "experienced health-care professional" without identifying the reviewer's experience, credentials or qualifications.

40.     In its denial letter, BCBS failed to comply with Jocelyn S.'s request to comply with ERISA by providing a response to the appeal that was clear or which explained what other information Plaintiffs could provide in order to perfect their claim. To the contrary, BCBS's denial letter simply cited language from page 63 of the SBD Booklet which excludes from coverage expenses incurred for alternative residential programs such as wilderness camps or military schools.

9

41.     Blue Ridge is neither a wilderness camp nor a military school, and BCBS's denial letter failed to identify any language in the SBD Booklet that further defined or described what constituted "alternative residential programs" that were excluded from coverage under the Policy, or why the treatment that E.S. received at Blue Ridge would fall under the exclusion in the Policy for alternative residential programs.

42.     In its denial letter, BCBS failed to comply with Jocelyn S.'s request that it provide a description of any additional materials or information necessary for Plaintiffs to perfect the claim, thereby depriving Plaintiffs of the opportunity to perfect their claim.

43.     In its denial letter, BCBS failed to comply with Jocelyn S.'s request that it comply with ERISA by providing physical copies of all documentation used for the initial determination to deny the claim and level one appeal. To the contrary, the denial letter simply asserted that the reviewer considered "your health," without providing or even identifying any records or other sources of information used to determine E.S.'s health; "your health plan," without providing any documents and only citing one page of the SBD Booklet; "clinical criteria or guidelines," without providing copies or even identifying what clinical criteria or guidelines were considered or used; and vaguely asserted that the reviewer "*may* also have used the latest information from proven research and medical journals"[11] leaving Plaintiffs left to wonder what additional information might the reviewer have used as the basis for denying the appeal.

44.     In its denial letter, BCBS failed to address or respond to Jocelyn S.'s arguments and evidence that Blue Ridge was a 24/7 outdoor behavior health treatment facility that was covered under the mental health and chemical dependency services portions of the Plan.

---

[11] BCBS denial letter dated 02/23/2023 at page 8 of 12 (emphasis added).

45.     In its denial letter, BCBS failed to comply with Jocelyn S.'s request for clear evidence that the Plan was being administered in accordance with the MHPAEA by conducting a parity analysis, thereby denying her of the opportunity to conduct an independent parity analysis herself.

46.     The denial by BCBS/the Plan of benefits solely and directly caused Plaintiffs to pay $49,320.00 in unreimbursed expenses for E.S.'s treatment at Blue Ridge.

47.     While E.S.'s diagnosed conditions improved from the services she received at Blue Ridge, at the completion of her treatment program at Blue Ridge, E.S.'s therapist expressed concern that E.S. would not be able to sustain the improvements she experienced at Blue Ridge upon discharge and that E.S. needed additional treatment in a residential therapeutic program or she was likely to relapse into life-threatening patterns of behavior.

48.     After Blue Ridge, E.S. transferred to Root Transition for continued intensive inpatient treatment.

49.     At the time of her admission to Root Transition, E.S. was diagnosed with posttraumatic stress disorder; major depressive disorder, moderate severity, recurrent episodes; generalized anxiety disorder; social anxiety disorder; cannabis use disorder, severe; alcohol use disorder, mild; and other specified neurodevelopmental disorder with deficits in working memory and executive functioning abilities. under the criteria described in the DSM-5.

50.     E.S. received treatment for these disorders at Root Transition from February 24, 2023 through August 9, 2023.

51.     Root Transition provided mental health and addiction treatment programs that are less intensive than acute hospitalization but more intensive than outpatient therapy, which qualified it as an intermediate or sub-acute behavioral health facility.

52.     At all times relevant hereto, Root Transition was licensed by the state of Utah to provide residential treatment for adolescents and operated in accordance with the governing Utah state regulations.

53.     E.S. benefitted from the intensive mental health treatment she received at Root Transition and had improvements in each of her diagnosed conditions from the services she received at Root Transition.

54.     Root Transition charged more than $104,200.00 for the services it provided to E.S., from February 24, 2023 through August 9, 2023, which charges were paid by Jocelyn S. and submitted to BCBS for reimbursement.

55.     BCBS initially denied the claims for services provided by Root Transition on the grounds that this treatment was not medically necessary.

56.     On or about August 1, 2023, Plaintiffs requested an external review of the appeal for the medical necessity denial of inpatient residential psychiatric level of care for E.S. at Root Transition.

57.     BCBS forwarded Plaintiffs' appeal to NMR, an independent review organization.

58.     On August 5, 2023, NMR issued a Notice of Independent Review Decision with the following findings: "Based on the plan's definition of medical necessity, the Inpatient Residential Psychiatric level of care for [E.S.] at Root Transition LLC for dates of service 02/24/2023 – forward is medically necessary for this patient."

59.     After NMR issued the Notice of Independent Review Decision, BCBS approved claims for treatment E.S. received from Root Transition; however, BCBS reimbursed less than half of the costs that Jocelyn S. paid to Root Transition.

60.     Root Transition charged Plaintiffs, and Plaintiffs paid to Root Transition, more than $104,200.00 for treatment E.S. received from Root Transition.

61.     Of the more than $104,200.00 Plaintiffs paid to Root Transition, BCBS reimbursed Plaintiffs only $49,617.00, leaving Plaintiffs with more than $54,583.00 in unreimbursed medical expenses for medically necessary treatment that E.S. received at Root Transition.

62.     Plaintiffs appealed BCBS's decision to pay only the usual and customary rate allowed for the claims for the treatment E.S. received at Root Transition on the grounds that BCBS's usual and customary rate for the services E.S. received was significantly lower than the rates charged by similar facilities, because interest accrued on the amounts owed to Root Transition due to the length of time it took to go through the claim and appeals process, and because there were no in-network providers in Plaintiffs' area available to treat E.S.'s condition.

63.     On September 16, 2024, BCBS sent plaintiffs a letter denying their appeal on the grounds that "the allowed amount is the most the plan will pay for covered services. If an out-of-network provider charges more than that allowed amount, you may have to pay the difference. Our records indicate that the provider involved in these claims is out-of-network. Therefore, the claim processed correctly."

64.     The letter from BCBS noted that "This is the final adverse determination . . .."

65.     As set forth above, Plaintiffs exhausted their pre-litigation appeal obligations under the terms of the Plan and ERISA.

66.     After receiving the denials, litigation was Plaintiffs' only option to enforce their right to benefits owing under the Plan and seek reimbursement of expenses under the terms of

13

the Plan (as written or as reformed or required by MHPAEA), and/or under the MHPAEA amendments to ERISA.

67.     Plaintiffs thereafter retained the undersigned to pursue their rights and remedies under ERISA.

68.     The remedies Plaintiffs seek herein are for the benefits due and pursuant to 29 U.S.C. § 1132(a)(1)(B), for appropriate equitable relief under 29 U.S.C. § 1132(a)(3) based on the Defendants' violation of the Mental Health Parity and Addiction Equity Act of 2008, pre-judgment interest, recoverable fees under 29 U.S.C. § 1132(g), and an award of costs and expenses under 29 U.S.C. § 1132(g) and other applicable law.

69.     Plaintiffs do not seek double recovery.

## FIRST CAUSE OF ACTION

### (Claim for Recovery of Benefits Under 29 U.S.C. § 1132(a)(1)(B))

70.     All allegations of this Complaint are incorporated here as though fully set forth herein.

71.     ERISA imposes higher-than-marketplace quality standards on insurers and plan administrators. It sets forth a special standard of care upon plan fiduciaries such as BCBS, acting as agent of the Plan, to "discharge [its] duties in respect to claims processing solely in the interests of the participants and beneficiaries" of the Plan. 29 U.S.C. § 1104(a)(1).

72.     BCBS and the Plan wrongly excluded coverage for E.S.'s treatment in violation of the terms of the Plan, which promise benefits to employees and their dependents for medically necessary treatment of mental health disorders. (As noted above, BCBS and the Plan have not challenged that E.S.'s treatment at Blue Ridge was medically necessary, and the independent review determined that E.S.'s treatment at Root Transition was medically necessary.)

14

73.    ERISA also underscores the particular importance of accurate claims processing and evaluation by requiring that administrators provide a "full and fair review" of claim denials and to engage in a meaningful dialogue with Plaintiffs in the pre-litigation appeal process.

74.    BCBS/the Plan's Denial Letters demonstrate the absence of a meaningful analysis of Plaintiffs' appeals. Among other things, BCBS/the Plan did not engage with or respond to the issues presented in the appeals and did not meaningfully address the arguments or concerns raised during the appeal process.

75.    BCBS/the Plan breached their fiduciary duties to Plaintiffs when they failed to comply with their obligations under 29 U.S.C. § 1104 and 29 U.S.C. § 1133 to act solely in E.S.'s interest and for the exclusive purpose of providing benefits to ERISA participants and beneficiaries, to produce copies of relevant documents and information to claimants upon request, and to provide a full and fair review of E.S.'s claims.

76.    The actions of BCBS and the Plan in denying payment for E.S.'s treatment are a violation of the terms of the Plan, as written and/or as reformed as required or permitted under ERISA.

**SECOND CAUSE OF ACTION**

**(Violation of the Mental Health Parity and Addiction Equity Act (29 U.S.C. § 1132(a)(3))**

77.    All allegations of this Complaint are incorporated here as though fully set forth herein.

78.    The MHPAEA is incorporated into ERISA and is enforceable by ERISA participants and beneficiaries as a requirement of both ERISA and the MHPAEA. The obligation to comply with both ERISA and the MHPAEA is part of BCBS/the Plan's fiduciary duties.

15

79.     Generally speaking, the MHPAEA requires ERISA plans to provide no less generous coverage for treatment of mental health and substance use disorders than they provide for treatment of medical/surgical disorders.

80.     The MHPAEA prohibits ERISA plans from imposing treatment limitations on mental health or substance use disorder benefits that are more restrictive than the predominant treatment limitations applied to substantially all medical/surgical benefits and makes illegal separate treatment limitations that are applicable only to mental health or substance use disorder benefits. 29 U.S.C. § 1185a(a)(3)(A)(ii).

81.     Impermissible nonquantitative treatment limitations (NQTLs) under the MHPAEA include, but are not limited to, restrictions based on geographic location, facility type, provider specialty, or other criteria that limit the scope or duration of benefits for mental health or substance use disorder treatment. 29 C.F.R. § 2590.712(c)(4)(ii).

82.     Comparable benefits offered by the Plan for medical/surgical treatment analogous to the benefits the Plan excluded for E.S.'s treatment include subacute inpatient treatment settings such as skilled nursing facilities, inpatient rehabilitation facilities, etc.

83.     The Plan does not exclude coverage for medically necessary care of medical/surgical conditions based on geographic location, facility type, provider specialty, or other criteria in the manner claimed by Defendants for treatment E.S. received at Blue Ridge.

84.     Upon information and belief, BCBS/the Plan's denial of coverage also violated the MHPAEA in application or effect. Because BCBS/the Plan declined to produce the requested documents and materials requested by Plaintiffs, further discovery is needed to resolve this aspect of Plaintiffs' claims.

85.     Defendants are in violation of 29 C.F.R. § 2590.712(c)(4)(i) because the terms of the Plan, as written or in operation, use processes, strategies, standards, or other factors to limit coverage for mental health or substance use disorder treatment in a way that is inconsistent with, and more stringently applied to, the processes, strategies, standards, or other factors used to limit coverage for medical/surgical treatment in the same classification.

86.     Plaintiffs expressly requested BCBS to perform a MHPAEA analysis of the Plan. They expressed serious concern that BCBS was violating the statute and asked for a response using specific and direct examples. BCBS failed or declined to do this and failed or declined to even address the MHPAEA in its Denial Letter or EOBs.

87.     These MHPAEA violations by Defendants are breaches of fiduciary duty and give Plaintiffs the right to obtain appropriate equitable remedies as provided under 29 U.S.C. § 1132(a)(3) including, but not limited to:

(a)     A declaration that the actions of Defendants violate the MHPAEA;

(b)     An injunction ordering Defendants to cease violating the MHPAEA and requiring compliance with the statute;

(c)     An Order requiring the reformation of the terms of the Plan and the medical necessity criteria utilized by Defendants to interpret and apply the terms of the Plan to ensure compliance with the MHPAEA;

(d)     An Order requiring disgorgement of funds obtained or retained by Defendants as a result of their violations of the MHPAEA;

(e)     An Order requiring an accounting by Defendants of the funds wrongly withheld by each Defendant from participants and beneficiaries of the Plan as a result of Defendants' violations of the MHPAEA;

17

(f)    An Order based on the equitable remedy of surcharge requiring Defendants to provide payment to Plaintiffs as make-whole relief for their loss;

(g)    An Order equitably estopping Defendants from denying Plaintiffs' claims in violation of the MHPAEA; and

(h)    An Order providing restitution from Defendants to Plaintiffs for their loss arising out of Defendants' violations of the MHPAEA and unjust enrichment.

88.    In addition, Plaintiffs are entitled to an award of pre-judgment interest and attorney fees and costs pursuant to 29 U.S.C. § 1132(g).

WHEREFORE, Plaintiffs seek relief as follows:

1. Judgment in the total amount paid for E.S.'s treatment at Blue Ridge and Roots Transition;

2. Pre- and post-judgment interest to the date of payment;

3. Appropriate equitable relief under 29 U.S.C. § 1132(a)(3) as outlined under Plaintiffs' Second Cause of Action;

4. Recoverable fees and costs incurred pursuant to 29 U.S.C. § 1132(g); and

5. For such further relief as the Court deems just and proper.

DATED this 20th day of February, 2025.

/s/Norris A. Adams, II
NORRIS A. ADAMS, II
N.C. State Bar No. 32552
**ESSEX RICHARDS, P.A.**
1701 South Boulevard
Charlotte, North Carolina 28203

Telephone: (704) 377-4300
Facsimile: (704) 372-1357
NAdams@essexrichards.com

Karra J. Porter
Utah State Bar No. 5223
CHRISTENSEN & JENSEN, P.C.
257 East 200 South, Suite 1100
Salt Lake City, Utah 84111
Telephone: (801) 323-5000
Facsimile: (801) 355-3472
Karra.Porter@chrisjen.com

*Attorneys for Plaintiffs*